**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ISSOUF COUBALY, *et al.*,

  *Plaintiffs*,

v.

CARGILL, INCORPORATED, *et al.*,

  *Defendants*.

Civil Action No. 21-0386 (DLF)

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 3

I.   Plaintiffs Lack Article III Standing.................................................................3

    A.   Plaintiffs' alleged injuries are not fairly traceable to Defendants.......................... 3

    B.   Plaintiffs cannot seek injunctive relief under the TVPRA or Article III ............... 5

II.  The Complaint Fails to State a Claim for Relief under the TVPRA ...................................7

    A.   Plaintiffs have not plausibly pleaded a TVPRA venture ......................................... 7

    B.   Plaintiffs have not plausibly pleaded "participation" in a venture ....................... 11

    C.   Plaintiffs fail to allege that Defendants had the requisite knowledge................... 14

        1.   Plaintiffs fail to connect Defendants to the violations that injured them.................................................................................................... 14

        2.   Plaintiffs improperly conflate "child labor" with "forced labor" ............. 18

    D.   Plaintiffs fail to allege that Defendants obtained a "knowing[ ] benefit" from a TVPRA violation................................................................... 19

III. Plaintiffs' TVPRA Claims are Impermissibly Extraterritorial ...........................................21

IV.  Plaintiffs' Common-Law Claims Must be Dismissed ........................................................22

    A.   The complaint fails to adequately plead any common-law claim......................... 22

    B.   Plaintiffs' common-law claims are time-barred .................................................. 24

V.   Plaintiffs' Cursory Request for Leave to Amend Should be Denied..................................25

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.B. v. Hilton Worldwide Holdings, Inc.*,
    484 F. Supp. 3d 921 (D. Or. 2020) ...................................................................................17

*A.B. v. Marriott Int'l, Inc.*,
    455 F. Supp. 3d 171 (E.D. Pa. 2020) ...............................................................................12

*A.C. v. Red Roof Inns, Inc.*,
    2020 WL 3256261 (S.D. Ohio June 16, 2020) ......................................................12, 13, 20

*A.D. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 8674205 (E.D. Va. July 22, 2020) .......................................................................8

*Adhikari v. Kellogg Brown & Root, Inc.*,
    845 F.3d 184 (5th Cir. 2017) ............................................................................................22

*Aguilera v. Aegis Commc'ns Grp.*,
    72 F. Supp. 3d 975 (W.D. Mo. 2014) ...............................................................................22

*Almanza v. United Airlines, Inc.*,
    851 F.3d 1060 (11th Cir. 2017) ........................................................................................10

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018) ...............................................................................................14

\* *Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................................18

*Ass'n of Retail Travel Agents, Ltd. v. Air Transport Ass'n of Am.*,
    635 F. Supp. 534 (D.D.C. 1986) ........................................................................................8

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 4368214 (N.D. Cal. July 30, 2020) ..........................................................4, 13, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................8

*Bistline v. Parker*,
    918 F.3d 849 (10th Cir. 2019) ..........................................................................................10

*Bregman v. Perles*,
    747 F.3d 873 (D.C. Cir. 2014) .........................................................................................23

*Christ v. Beneficial Corp.*,
    547 F.3d 1292 (11th Cir. 2008) ..........................................................................................6

*City of New York v. Chavez*,
  944 F. Supp. 2d 260 (S.D.N.Y. 2013)......................................................................9

*Conboy v. AT&T Corp.*,
  241 F.3d 242 (2d Cir. 2001)..................................................................................6

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*,
  2021 WL 1186333 (S.D. Tex. Mar. 30, 2021)......................................................15

\* *Doe I v. Apple Inc.*,
  No. 19-CV-3737 (D.D.C. Nov. 2, 2021) ........................................................ *passim*

*Doe v. Kipp DC Supporting Corp.*,
  373 F. Supp. 3d 1 (D.D.C. 2019)..........................................................................25

*Doe v. Rickey Patel, LLC*,
  2020 WL 6121939 (S.D. Fla. Sept. 30, 2020) ........................................................9

*Doe v. Walmart Inc.*,
  2019 WL 499754 (N.D. Cal. Feb. 8, 2019) .............................................................4

*In re Facebook, Inc.*,
  625 S.W.3d 80 (Tex. 2021)...................................................................................11

*FDIC v. Bank of Am., N.A.*,
  308 F. Supp. 3d 197 (D.D.C. 2018)......................................................................23

*Flores v. City of New York*,
  2021 WL 663977 (E.D.N.Y. Feb. 19, 2021)..........................................................6

*Geiss v. Weinstein Co. Holdings*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019)...................................................................20

*Gerlich v. U.S. Dep't of Just.*,
  659 F. Supp. 2d 1 (D.D.C. 2009) ...........................................................................6

*H.G. v. Inter-Cont'l Hotels Corp.*,
  489 F. Supp. 697 (E.D. Mich. 2020).....................................................................17

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*,
  238 F. Supp. 2d 174 (D.D.C. 2002)..................................................................5, 11

*J.C. v. Choice Hotels Int'l, Inc.*,
  2020 WL 6318707 (N.D. Cal. Oct. 28, 2020).................................................15, 17

*J.C. v. Choice Hotels Int'l, Inc.*,
  2020 WL 3035794 (N.D. Cal. June 5, 2020) ..........................................................9

*J.L. v. Best Western Int'l, Inc.,*
  521 F. Supp. 3d 1048 (D. Colo. 2021) ........................................................9, 10, 15

*Jean-Charles v. Perlitz,*
  937 F. Supp. 2d 276 (D. Conn. 2013) ..................................................................13

*Johnson v. Marcheta Invs. Ltd. P'ship,*
  711 A.2d 109 (D.C. 1998) ....................................................................................24

*Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter,*
  575 U.S. 650 (2015) ..............................................................................................21

*Kiwanuka v. Bakilana,*
  844 F. Supp. 2d 107 (D.D.C. 2012) .....................................................................24

*Kramer Assocs., Inc. v. Ikam, Ltd.,*
  888 A.2d 247 (D.C. 2005) .....................................................................................23

*Krim v. pcOrder.com, Inc.,*
  402 F.3d 489 (5th Cir. 2015) ...............................................................................14

*Linde v. Arab Bank, PLC,*
  353 F. Supp. 2d 327 (E.D.N.Y. 2004) ...................................................................6

*M.L. v. craigslist Inc.,*
  2020 WL 5494903 (W.D. Wash. Sept. 11, 2020) ...........................................10, 16

*M.A. v. Wyndham Hotels & Resorts, Inc.,*
  425 F. Supp. 3d 959 (S.D. Ohio 2019) ................................................................17

*Mahon v. Ticor Title Ins. Co.,*
  683 F.3d 59 (2d Cir. 2012) .....................................................................................3

*Mazor v. Farrell,*
  186 A.3d 829 (D.C. 2018) .....................................................................................23

*In re McCormick & Co.,*
  217 F. Supp. 3d 124 (D.D.C. 2016) .......................................................................9

*N. Am. Cath. Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC,*
  887 F. Supp. 2d 78 (D.D.C. 2012) .......................................................................25

*Nat'l ATM Council, Inc. v. Visa Inc.,*
  922 F. Supp. 2d 73 (D.D.C. 2013) .........................................................................7

*Nattah v. Bush,*
  770 F. Supp. 2d 193 (D.D.C. 2011) .....................................................................25

\* *Nestlé USA, Inc. v. Doe*,
  141 S. Ct. 1931 (2021) ....................................................................................2, 12, 22

*Ochoa v. Superior Court*,
  703 P.2d 1 (Cal. 1985) ...............................................................................................24

*Owino v. CoreCivic, Inc.*,
  2020 WL 1550218 (S.D. Cal. Apr. 1, 2020) ...............................................................6

*Perez v. Wells Fargo & Co.*,
  2015 WL 1887354 (N.D. Cal. Apr. 24, 2015) .............................................................3

*Purcell v. Thomas*,
  928 A.2d 699 (D.C. 2007) ..........................................................................................24

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017) ......................................................................................10

\* *RJR Nabisco, Inc. v. European Cmty.*,
  136 S. Ct. 2090 (2016) ...............................................................................................21

*Roe v. Wilson*,
  365 F. Supp. 3d 71 (D.D.C. 2019) .............................................................................25

*Ruelas v. Cnty. of Alameda*,
  519 F. Supp. 3d 636 (N.D. Cal. 2021) .......................................................................10

\* *S.J. v. Choice Hotels Int'l, Inc.*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020) ..................................................................15, 16

*S.Y. v. Naples Hotel Co.*,
  476 F. Supp. 3d 1251 (M.D. Fla. 2020) .....................................................................10

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976) ........................................................................................................6

*Baloco ex rel. Tapia v. Drummond Co.*,
  640 F.3d 1338 (11th Cir. 2011) ...................................................................................4

*Tidler v. Eli Lilly & Co.*,
  851 F.2d 418 (D.C. Cir. 1988) ...................................................................................14

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
  444 U.S. 11 (1979) ........................................................................................................5

*United States v. Eiland*,
  738 F.3d 338 (D.C. Cir. 2013) .....................................................................................9

\* *United States v. Papagno*,
   639 F.3d 1093 (D.C. Cir. 2011)....................................................................................11

*Wagshal v. Foster*,
   28 F.3d 1249 (D.C. Cir. 1994).......................................................................................6

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*,
   389 F.3d 1251 (D.C. Cir. 2004)....................................................................................25

**STATUTE**

\* 18 U.S.C. § 1595...........................................................................................5, 17, 20, 22

**OTHER AUTHORITY**

NORC Final Report (Oct. 2020).......................................................................................18

**INTRODUCTION**

Earlier this month, Judge Nichols of this Court dismissed claims virtually identical to those in this case, brought by the same plaintiffs' counsel. *See* Opinion, *Doe I v. Apple Inc.*, No. 19-CV-3737 (D.D.C. Nov. 2, 2021), ECF 50 ("*Apple* Opinion"). There, the plaintiffs alleged that U.S. corporations were liable under the TVPRA and the common law for forced labor and trafficking occurring at cobalt mines in the Democratic Republic of the Congo, from where they acquired cobalt. The Court rejected those claims because, among other reasons, the plaintiffs could not satisfy Article III's traceability requirement, *id.* at 11-15; the plaintiffs' supply-chain "venture" allegations were inadequate, *id.* at 20-22; the TVPRA does not apply extraterritorially to private civil claims, *id.* at 26-30; and the plaintiffs failed to allege a relationship between themselves and the defendants, as required by their common-law claims, *id.* at 31-33. This Court should dismiss Plaintiffs' materially indistinguishable complaint for the same reasons.

Plaintiffs' opposition confirms at least four fatal flaws in their claims. *First*, Plaintiffs do not and cannot point to any allegation in the complaint establishing a "direct connection" between Defendants and the unnamed individuals who trafficked Plaintiffs or forced them to work—let alone establishing that Defendants were "involved in a commercial enterprise" with those individuals. *Apple* Opinion, at 13, 21. The most Plaintiffs allege is that some (but not all) of them worked on farms located in "areas" of Côte d'Ivoire from which some (but not all) Defendants purportedly sourced cocoa. Mot. 1, 24, 39. Plaintiffs' opposition fails to address this lack of connection between Plaintiffs' injuries and Defendants' alleged actions. Without this link, Plaintiffs cannot trace their injuries to Defendants, as required for Article III standing; they cannot plausibly allege that Defendants were part of any "venture" with the primary wrongdoers that injured them; and they cannot state common-law claims.

*Second*, even if Plaintiffs had plausibly alleged such a connection, the opposition does not

identify any way in which Defendants affirmatively "participated" in a venture that injured Plaintiffs—much less how Defendants knowingly benefitted by doing so.  Plaintiffs' entire theory of participation is one of omission:  Defendants (1) made voluntary commitments in the 2001 Harkin-Engel Protocol to work with the U.S. Department of Labor, the Ivorian government, and other stakeholders to address child labor; and (2) allegedly have not done enough (in Plaintiffs' opinion) to fulfill those commitments.  No court has held that mere inaction—much less taking too long to remedy a complex socioeconomic problem—violates the TVPRA.  And construing the TVPRA so expansively would make companies reluctant to join public-private partnerships to address global labor issues, undermining the U.S. government's foreign policy interests.  *See Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1939 (2021) (opinion of Thomas, J.).

*Third*, Plaintiffs' opposition consistently conflates child labor with forced labor.  For example, Plaintiffs suggest that this Court should infer the existence of a "venture" from the alleged fact that "child labor has dramatically increased" since 2001.  Opp. 21; *see also id.* at 25 ("there are now 1.56 million children harvesting cocoa in Côte d'Ivoire and Ghana" (emphasis omitted)).  Defendants strongly oppose child labor.  But Plaintiffs do not and cannot dispute that the TVPRA prohibits only forced labor and trafficking, not labor by persons under a specific age.  *See* Opp. 12; *Apple* Opinion, at 24.  Plaintiffs' complaint fails to allege plausibly that Defendants participated in or should have known about any instances of forced labor or trafficking in their supply chains, much less the particular TVPRA violations that injured *Plaintiffs*.

*Fourth*, Plaintiffs' claims are impermissibly extraterritorial.  As *Apple* held, "seeking to hold Defendants liable for the TVPRA violations" alleged here, which did not occur "anywhere other than in" Mali and Côte d'Ivoire, "would amount to extraterritorial application of § 1595.  Because Congress did not authorize that, their claims must fail."  *Apple* Opinion, at 30.

The injuries Plaintiffs allege in their complaint are serious.  Defendants strongly condemn forced, coerced, and child labor, and have devoted considerable time and resources to help improve labor conditions in Côte d'Ivoire.  But there is no basis in law for imposing liability *on Defendants* for Plaintiffs' injuries, which occurred at the hands of unnamed individuals with whom Defendants have no connections.  Because no amendment can cure the defects in the complaint, it should be dismissed with prejudice.

## ARGUMENT

### I.   Plaintiffs Lack Article III Standing

#### A.   Plaintiffs' alleged injuries are not fairly traceable to Defendants

Plaintiffs cannot satisfy Article III's traceability requirement, because their alleged injuries were inflicted by independent traffickers and farmers with no connection to Defendants.  *See Apple* Opinion, at 11-15; Mot. 8-11.  Plaintiffs' sole argument regarding traceability is that "Defendants are in a 'venture' with each other and the cocoa plantations in their supply chains, a venture that makes Defendants and their co-venturers jointly and severally liable for" Plaintiffs' injuries.  Opp. 41.  The *Apple* court rejected an identical argument, *see Apple* Opinion, at 12, and this Court should do the same for at least two reasons.

*First*, Plaintiffs have not pleaded a fairly traceable connection between their specific injuries and each Defendant.  "To demonstrate that they have standing, named plaintiffs in a class action suit must plead facts showing standing as to *each* defendant, including alleging that they were injured by each such defendant." *Perez v. Wells Fargo & Co.*, 2015 WL 1887354, at *5 (N.D. Cal. Apr. 24, 2015) (emphasis added); *see also Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-66 (2d Cir. 2012) (rejecting argument that Article III "permits suits against non-injurious defendants").  Plaintiffs do not allege that any Defendant "controlled the [farms] or conditions that led to Plaintiffs' injuries," *Apple* Opinion, at 12, or "directly oversaw or controlled Plaintiffs, their

supervisors, or employers in any way," *id.* at 15.  And assertions that Defendants participated together in a TVPRA venture, like "allegations of a conspiracy and aiding and abetting" among Defendants, "simply are not enough to demonstrate the traceability of injury to certain defendants if those defendants had nothing to do with the named plaintiffs."  *Doe v. Walmart Inc.*, 2019 WL 499754, at *10 (N.D. Cal. Feb. 8, 2019).

Plaintiffs do not cite any case holding that a plaintiff can satisfy Article III's traceability requirement merely by alleging the existence of a TVPRA "venture."  The four cases they cite all addressed the *merits* of TVPRA claims against hotel chains for alleged sex trafficking (Opp. 41), not standing.  And in all of the cases where claims were allowed to proceed, the plaintiffs alleged they suffered injuries on the specific defendant's property and interacted directly with the specific defendant's employees or agents.  In *B.M. v. Wyndham Hotels & Resorts, Inc.*, by contrast, the court dismissed claims that two hotel franchisors were directly liable under the TVPRA because the complaint was "devoid of any facts linking" the franchisor defendants to injuries the plaintiff suffered at franchisee hotels—a flaw that would also indicate a lack of traceability for Article III standing.  2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020).[1]

*Second*, the alleged venture cannot establish Article III standing because it includes only Defendants and their "specific cocoa suppliers," Opp. 17, *not* the individuals who allegedly trafficked Plaintiffs or forced them to work.  The complaint does not plausibly allege that any Plaintiff worked on a cocoa farm that supplied any Defendant, much less that Defendants "oversaw or controlled Plaintiffs, their supervisors, or employers in any way."  *Apple* Opinion, at 15.  As discussed in Defendants' opening brief, four Plaintiffs worked in "frontier" or "free zone[s],"

---

[1] As the *Apple* court explained, *Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338 (11th Cir. 2011) (cited by Opp. 41 n.18), is inapposite because the plaintiffs there alleged that the defendants *themselves* "hired paramilitaries to assassinate [plaintiffs'] fathers."  *Apple* Opinion, at 14-15.

which the complaint describes as unregulated and unmonitored and thus impossible to connect to any Defendant.  Mot. 9.  The remaining Plaintiffs allegedly worked in "areas" in Côte d'Ivoire from which one or more (but not all) Defendants sourced cocoa.  Mot. 9-10.  This vague allegation does not plausibly tie the specific farms on which those Plaintiffs worked or Plaintiffs' unidentified traffickers to any Defendant—a point Plaintiffs concede by failing to address it in their opposition. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("a court may treat those arguments that the plaintiff failed to address as conceded").

Plaintiffs try to overcome the absence of any connection to Defendants by suggesting that Defendants are responsible for forced labor anywhere in Côte d'Ivoire because they purportedly said they would "require our farmers to stop using child labor."  Opp. 42.  Plaintiffs offer nothing to support their "inference" that "Defendants could have acted to end" the forced labor practices that injured Plaintiffs.  *Id.*  And a vague allegation that Defendants' voluntary efforts to help combat child labor in Côte d'Ivoire were inadequate does not come close to establishing a fairly traceable connection between Defendants' conduct and Plaintiffs' injuries from trafficking and forced labor.  *See Apple* Opinion, at 12-14.

## B.     Plaintiffs cannot seek injunctive relief under the TVPRA or Article III

Plaintiffs' opposition confirms that they cannot seek injunctive relief under the TVPRA. They offer no interpretive principle that would read injunctive relief into a statutory provision specifying that private plaintiffs may "recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a).  Nor could they:  "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979).  For that reason, courts have interpreted numerous statutes that permit the government to seek injunctive relief, while allowing private plaintiffs to obtain damages, to foreclose "private injunctive relief."

*Conboy v. AT&T Corp.*, 241 F.3d 242, 255 (2d Cir. 2001) (47 U.S.C. §§ 206, 207, 401(a)).[2]

But even if injunctive relief were available under Section 1595, Plaintiffs lack standing to pursue it.  Plaintiffs have no answer to Defendants' argument that their injunctive-relief claim does not satisfy Article III's redressability requirement.  Mot. 13.  Nor could they, since it amounts to "a request for Defendants to change the behavior of a third party not before the court."  *Apple* Opinion, at 15 (no standing for injunctive relief claim).  And Plaintiffs concede they "must show a likelihood of future injury that needs to be enjoined" but acknowledge they "are not in danger of future injury."  Opp. 43-44.  Those concessions dispose of the issue.

Plaintiffs acknowledge that "there is no case law in this Circuit that would explicitly allow them" to pursue injunctive relief for unnamed, putative class members.  Opp. 44.  But they urge this Court to depart from binding precedent in this purportedly "unique" case, citing one district court case from a different circuit.  *Id.* at 43, 45 (citing *Flores v. City of New York*, 2021 WL 663977 (E.D.N.Y. Feb. 19, 2021)).  But the named plaintiff in *Flores* herself faced some risk—albeit an attenuated one—of being harmed again in the same way.  *See* 2021 WL 663977, at *4. Here, by contrast, Plaintiffs concede they face no future risk of being subjected to forced labor. *See* Opp. 44.  To the extent the *Flores* court relied solely on the risk of harm to unnamed putative class members, its decision is inconsistent with binding Supreme Court and D.C. Circuit precedent. *See Gerlich v. U.S. Dep't of Just.*, 659 F. Supp. 2d 1, 19 (D.D.C. 2009) (citing *Wagshal v. Foster*, 28 F.3d 1249 (D.C. Cir. 1994); *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26 (1976)).

---

[2] *See also, e.g.*, *Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008) (15 U.S.C. §§ 1607, 1640); *Linde v. Arab Bank, PLC*, 353 F. Supp. 2d 327, 331 (E.D.N.Y. 2004) (18 U.S.C. §§ 2333, 2339B).  The holding in *Owino v. CoreCivic, Inc.*, 2020 WL 1550218 (S.D. Cal. Apr. 1, 2020) (cited by Opp. 43), that plaintiffs lacked standing to pursue injunctive relief, says nothing about whether such relief is available under the TVPRA—an argument the defendant did not raise.

## II.     The Complaint Fails to State a Claim for Relief under the TVPRA

Plaintiffs' opposition retreats from the theory that Defendants violated the TVPRA by purchasing cocoa from a trafficking venture encompassing the entire global cocoa market.  Instead, Plaintiffs pivot, contending that Defendants formed a "narrow" venture among themselves and their immediate cocoa suppliers, and violated the TVPRA by failing to meet their own commitments to address child labor in Côte d'Ivoire.  Opp. 16.  Because Plaintiffs' theory is inconsistent with the text of the TVPRA and the weight of authority interpreting it, their TVPRA claims should be dismissed for this independent reason as well.

### A.     Plaintiffs have not plausibly pleaded a TVPRA venture

As Defendants explained in their opening brief, the complaint fails to plead the existence of a single, overarching "cocoa supply chain" venture encompassing everyone involved in the supply, distribution, or purchase of cocoa from Côte d'Ivoire.  Mot. 15-18.  Plaintiffs' opposition abandons any attempt to defend such a venture, relying instead on a "relatively narrow" venture between Defendants and their "specific cocoa suppliers."  Opp. 16-17.  For at least four separate reasons, Plaintiffs' revised and unpleaded venture theory fails to support a plausible TVPRA claim.

**1. No Venture Among Defendants**.  Plaintiffs do not plead facts sufficient to establish a "commercial enterprise" among Defendants to commit TVPRA violations—an issue the Court found dispositive in *Apple*.  Although Plaintiffs attempt to allege that Defendants and their suppliers formed a venture "to lead the cocoa sector's intentionally ineffective response to endemic child labor," the only *fact* identified to support that theory is Defendants' participation in industry associations such as the World Cocoa Foundation ("WCF").  *See* Opp. 16, 20-21.  But these associations are not "commercial enterprise[s]" and thus cannot be a "venture" within the meaning of the TVPRA.  *Apple* Opinion, at 21.  Even if these associations were commercial enterprises, "membership in an association" is not "enough to establish agreement or conspiracy," *Nat'l ATM*

*Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73, 93 (D.D.C. 2013), absent "[p]roof of knowing, intentional participation in the illegal activities of the association," *Ass'n of Retail Travel Agents, Ltd. v. Air Transport Ass'n of Am.*, 635 F. Supp. 534, 536 (D.D.C. 1986).  No such allegations exist here:  The complaint alleges no facts plausibly suggesting that WCF sought to perpetuate forced labor or that Defendants knowingly agreed to pursue that goal.[3]  To the contrary, Plaintiffs admit that WCF—which includes 92 members from different industries—was created to monitor and remediate labor practices in the cocoa supply chain.  Mot. 17.

At most, Plaintiffs' allegations boil down to the assertion that WCF and other coalitions have not done enough to combat child labor in Côte d'Ivoire.  *See* Opp. 21 (arguing that a "venture" should be inferred because "child labor has dramatically increased").  But other courts have refused to infer a TVPRA venture based on mere failure to stop trafficking offenses.  *See A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 8674205, at *5 (E.D. Va. July 22, 2020) ("general failure to adequately educate and train staff, adopt policies, and implement protocols and procedures" insufficient to establish a "trafficking venture").  This Court should reach the same result here.

**2. No Venture Among Suppliers**.  Even if Plaintiffs had alleged a plausible venture between Defendants to commit TVPRA violations, the TVPRA claims still should be dismissed because there are no alleged facts plausibly connecting Defendants' cocoa *suppliers* to that venture.  The term "venture" in the TVPRA means a "commercial enterprise" between two or more individuals acting together for a common purpose.  *Apple* Opinion, at 21; Mot. 15.  Plaintiffs

---

[3] It is implausible that Defendants "would deliberately prolong forced child labor."  Opp. 24. Plaintiffs' sole allegation to support that theory is that "there are now 1.56 million children harvesting cocoa in Cote D'Ivoire and Ghana."  Opp. 25 (emphasis omitted).  The obvious explanation for the continued problem of child labor is that it presents a complex socioeconomic problem that governments, NGOs, and industry stakeholders have not yet solved, *despite* their efforts to do so.  Nothing in the complaint nudges Plaintiffs' theory of deliberate inaction "across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

do not allege that all of Defendants' various cocoa suppliers are involved in any such enterprise with each other.  At most, Plaintiffs attempt to plead a "hub-and-spoke" venture where Defendants (the hub) are in a venture with numerous separate and independent cocoa suppliers (the spokes).  Such "hub-and-spoke" allegations are insufficient to sustain a viable TVPRA venture.  *See In re McCormick & Co.*, 217 F. Supp. 3d 124, 135 (D.D.C. 2016) (rejecting "hub-and-spoke" theory where no allegations that spokes "made an agreement with each other"); *cf. City of New York v. Chavez*, 944 F. Supp. 2d 260, 272 (S.D.N.Y. 2013) ("The insufficiency of 'hub-and-spokes' associations to constitute RICO 'enterprises' has been long recognized.").

Plaintiffs cannot avoid this outcome by citing the definition of "venture" contained in Section 1591 of the TVPRA.  *See* Opp. 17-18.  Section 1591's definition of venture—"two or more individuals associated in fact"—does not apply to other provisions of the TVPRA.  Mot. 15 n.3; *see also Apple* Opinion, at 20 ("Section 1595 does not define 'venture,'" and thus "the Court must give that term its ordinary meaning.").[4]  Even if Section 1591's definition of venture were applicable, Plaintiffs would still bear the burden of alleging that each participant in the venture associated with the others for the purpose of committing TVPRA violations.  Accordingly, Plaintiffs' failure to plead any agreement among Defendants and their suppliers to engage in forced labor requires dismissal of their claims.  *See United States v. Eiland*, 738 F.3d 338, 360 (D.C. Cir. 2013) ("associated in fact" requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose");

---

[4] Plaintiffs argue that the definition of "venture" in Section 1591 should apply here. Opp. 17.  But the decisions Plaintiffs cite are irrelevant because they do not address the meaning of the term "venture."  Instead, the cases relate to the separate question of what constitutes "participation." *See, e.g.*, *J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1061-62 (D. Colo. 2021) (interpreting "participation in a venture"); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at *1 n.1 (N.D. Cal. June 5, 2020) (same); *Doe v. Rickey Patel, LLC*, 2020 WL 6121939, at *5 (S.D. Fla. Sept. 30, 2020) (same).  Defendants address those arguments below.  *Infra* 11-13.

*Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1073 (11th Cir. 2017) (holding "associated-in-fact" is more stringent than "conspiracy"; it requires "more to its structure than just a common purpose in accordance with which the associates act").

3. **No Venture With Primary Offenders**.  Plaintiffs' alleged venture suffers from another obvious defect:  It does not include Plaintiffs' alleged traffickers or the farmers who allegedly forced them to work.  The TVPRA allows civil claims against "a primary offender" or someone who benefits "financially from participation in a 'venture *with the primary offender*."  *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019) (emphasis added).  Here, the complaint alleges no facts connecting Defendants and their "specific cocoa suppliers" to the "primary offenders," i.e., the individuals who allegedly trafficked Plaintiffs or forced them to work.  *Supra* 4-5.  The absence of a connection between the primary offenders and the supposed "venture" is reason alone to dismiss the TVPRA claim.  *See*, *e.g.*, *Apple* Opinion, at 22 n.4 (allegation that defendant agreed to obtain ownership over cobalt production insufficient absent allegations that defendant "had any control over . . . mining practices" or "ran any of the mines at issue itself"); *J.L.*, 521 F. Supp. 3d at 1067 (no TVPRA venture where "allegations [we]re insufficient to plausibly allege that Marriott participated in a joint venture *with plaintiff's traffickers*" (emphasis added)).[5]

4. ***Noerr-Pennington***.  Plaintiffs' venture allegations are barred by the *Noerr-Pennington*

---

[5] In each case cited by Plaintiffs (Opp. 18-19), the defendant was found to be in a venture with the plaintiffs' traffickers based on its direct connections to those traffickers.  *See Ricchio v. McLean*, 853 F.3d 553, 555-56 (1st Cir. 2017) (alleging a venture between hotel operators and individual who committed sex trafficking); *Ruelas v. Cnty. of Alameda*, 519 F. Supp. 3d 636, 645 (N.D. Cal. 2021) ("Plaintiffs argue that County Defendants are primary offenders of the TVP[R]A, and that Aramark is liable as both a primary and a venture offender."); *M.L. v. craigslist Inc.*, 2020 WL 5494903, at *6 (W.D. Wash. Sept. 11, 2020) (alleging "that craigslist knowingly fostered a business relationship with traffickers to support the venture of trafficking Plaintiff"); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1256 (M.D. Fla. 2020) (alleging a venture between hotel and the trafficker that injured plaintiff).

doctrine.  *See* Mot. 18.  Plaintiffs' alleged "venture" is predicated on Defendants' lobbying the government to take, or refrain from taking, legislative action.  Compl. ¶¶ 61, 155; *see also* Opp. 2-3, 13-16 (faulting Defendants for conduct toward "regulators").  *Noerr-Pennington* prohibits any claims based on alleged efforts to modify (or prevent modification of) federal law governing labor conditions.  Mot. 18.  Plaintiffs' opposition ignores, and thereby concedes, this argument, which is an independent reason to dismiss the TVPRA claim.  *See Hopkins*, 238 F. Supp. 2d at 178.

### B.    Plaintiffs have not plausibly pleaded "participation" in a venture

Plaintiffs' opposition also confirms that Plaintiffs cannot plausibly allege "participation" under the TVPRA.  Plaintiffs originally alleged "participation" based on Defendants' alleged purchase of cocoa from Côte d'Ivoire—a theory that fails for the reasons discussed in Defendants' opening brief.  Mot. 18-23.  As with the "venture" element, Plaintiffs' opposition retreats from their original theory, now premising "participation" on Defendants' formation of the WCF and allegedly doing "little to change their system of cocoa production that is dependent on child labor." Opp. 24.  This new participation theory also fails.

*First*, Plaintiffs do not and cannot allege that this purported conduct constitutes active participation in the alleged wrongdoing that injured Plaintiffs.  The plain meaning of "'participation' connotes more than mere passive acquiescence in trafficking conducted by others." *In re Facebook, Inc.*, 625 S.W.3d 80, 96 (Tex. 2021); *United States v. Papagno*, 639 F.3d 1093, 1098 (D.C. Cir. 2011) (discussing meaning of "participate").  Plaintiffs do not identify *any* affirmative act by Defendants to facilitate TVPRA violations by Plaintiffs' traffickers or at the farms where Plaintiffs worked.  Instead, Plaintiffs attack a straw man by arguing that they need not show that Defendants "directly participated in acts of enslaving children."  Opp. 21-22. Defendants do not contend that the TVPRA requires direct participation in the trafficking offense; rather the TVPRA requires conduct that constitutes *active* assistance to or engagement with the

11

primary wrongdoers.  Mot. 19-20 (collecting cases).

Plaintiffs have abandoned any attempt to satisfy that standard.[6]  Instead, Plaintiffs' sole "participation" argument is that Defendants "did little or nothing to *stop*" forced labor in the global cocoa supply chain.  Opp. 24.  But even if that were true, which it is not, failing to prevent *others* from engaging in trafficking or forced labor is the opposite of "participation" in a venture.  Neither the TVPRA's text nor the cases Plaintiffs cite support a "participation" theory based solely on Defendants' supposed failure to meet their voluntary commitments designed to help end child labor in Côte d'Ivoire.  Mot. 19; *see A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020) (TVPRA venture liability does not require companies "to affirmatively stop the trafficking").  If the TVPRA's language could be stretched that far, Plaintiffs' participation theory would also sweep in the Ivorian government, the U.S. Department of Labor, and other partners in the Harkin-Engel Protocol.  *See* Mot. 35.[7]

*Second*, Plaintiffs do not even attempt to allege any agreement between Defendants and the wrongdoers that injured Plaintiffs.  Plaintiffs point to cases interpreting Section 1595(a) to

---

[6] Plaintiffs note (Opp. 22 n.7) that several courts have refused to apply Section 1591(e)'s definition of "participation in a venture" to Section 1595 claims.  *A.C. v. Red Roof Inns, Inc.*, 2020 WL 3256261, at *6 (S.D. Ohio June 16, 2020) (collecting cases).  But Defendants do not rely on Section 1591(e).  And the decisions declining to apply Section 1591(e)'s definition are inapposite, because they held that the term "knowingly" in Section 1591(e) conflicts with "the 'known or should have known' language of § 1595."  *Id.*  That has nothing to do with whether Section 1595 liability can be predicated by conduct that is less than *active* participation in the venture—and the cases demonstrate that it cannot.  In *Red Roof*, for example, the hotel participated in the sex trafficking venture "by knowingly or negligently *providing lodging* to those who purchased sex from [the plaintiff]."  *Id.* (emphasis added).

[7] Contrary to Plaintiffs' suggestion, Justice Thomas's opinion in *Nestlé* does not suggest that their TVPRA claim is viable.  Opp. 4-5.  That opinion observed that the TVPRA allows "plaintiffs to sue defendants who are involved indirectly with slavery."  *Nestlé*, 141 S. Ct. at 1939.  It did not address whether the *Nestlé* plaintiffs could have sued successfully under the TVPRA.  *See id.* at 1940 (noting without endorsing respondents' "suggest[ion] that their allegations about decades-old conduct could satisfy the TVPRA if Congress had enacted that law earlier").

require a "tacit agreement" between the defendant and the primary wrongdoers to engage in the wrongdoing that harmed the plaintiff. Opp. 22-23. In all such cases, however, the existence of a "tacit agreement" was plausible because the defendant allegedly provided direct assistance to the primary wrongdoers. For example, in *Jean-Charles v. Perlitz*, the plaintiffs alleged the defendants worked directly with the wrongdoer, provided the means for his wrongdoing, and then actively concealed it. 937 F. Supp. 2d 276, 288 (D. Conn. 2013); *see also Red Roof*, 2020 WL 3256261, at *6 ("Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement.").

No case has ever found "participation in a venture" under the TVPRA where, as here, there are no allegations to support the plausible existence of such an agreement. In *B.M. v. Wyndham Hotels & Resorts, Inc.*, for example, the plaintiff alleged that hotel franchisors should be liable under the TVPRA because their franchisees "rented rooms to people they knew or should have known were engaged in sex trafficking." 2020 WL 4368214, at *5. The court dismissed the TVPRA claim because the plaintiff failed to plead that the hotel franchisors themselves—as distinguished from their franchisees—participated in a venture with the traffickers. As the court explained, the complaint was "devoid of any facts linking" the parent hotel chains, Wyndham and Choice, "to the sex trafficking of this Plaintiff (B.M.)," and thus failed "to make a plausible claim for Wyndham's and Choice's 'participation in [a] venture.'" *Id.* (emphasis omitted).

Plaintiffs cannot overcome the lack of any alleged agreement between Defendants and the alleged wrongdoers by asserting that, because "Defendants' venture controlled 70% of the cocoa supply chain," it is "more likely than not that the venture was legally responsible for" Plaintiffs' injuries. Opp. 27. Even if that conclusory allegation were true, it would not establish a connection

13

between each individual Defendant and the specific farms on which Plaintiffs worked, much less Plaintiffs' alleged traffickers. Plaintiffs' argument also misuses statistical evidence. This probabilistic method of reasoning "leads to the demonstrably wrong conclusion that one hundred percent of" Ivorian farms supply cocoa to the supposed venture, because it is more likely than not that every farm, considered individually, is part of the 70%. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 54 (1st Cir. 2018).[8]

*Finally*, even if Plaintiffs had adequately alleged participation by "Defendants" collectively, they cannot evade their group pleading problem (Mot. 22-23) by asserting that Defendants are jointly and severally liable for damages caused by the venture in which they allegedly participated. Opp. 26-27. Plaintiffs must allege facts supporting a plausible inference that each Defendant participated in a TVPRA venture *before* arguing joint and several liability for participation in that venture, not the other way around.

### C.    Plaintiffs fail to allege that Defendants had the requisite knowledge

Plaintiffs cannot satisfy the TVPRA's knowledge requirement for two reasons. First, Plaintiffs fail to allege plausibly that Defendants should have known about the particular forced labor violations that injured *them*. Second, Plaintiffs' allegations relate exclusively to Defendants' alleged awareness of *child* labor, which is not a violation of the TVPRA. *See* Mot. 23-28.

### 1.    *Plaintiffs fail to connect Defendants to the violations that injured them*

Plaintiffs' opposition does not point to a single well-pleaded fact indicating that Defendants knew or should have known of the specific forced labor violations that harmed Plaintiffs. Instead,

---

[8] *See also Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 425 (D.C. Cir. 1988) (evidence that defendant manufactured 95% of drug was insufficient to prove that defendant caused plaintiff's injury from that drug); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 495-97 (5th Cir. 2015) (rejecting argument that plaintiffs demonstrated traceability for securities claim "by showing a very high probability" that each plaintiff purchased a share traceable to public offerings).

Plaintiffs argue that the TVPRA's knowledge requirement is satisfied because "Defendants were aware of general allegations of the *category* of violation Plaintiffs suffered."  Opp. 9 (emphasis added).  That misstates the law.

Courts have uniformly held that to state a TVPRA claim, a plaintiff must plausibly allege that each defendant "should have known about the trafficking of *the plaintiff in particular*—not about trafficking occurring . . . in general." *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021) (emphasis added); *see also* Mot. 23-25.  Even the cases cited by Plaintiffs acknowledge this requirement.  For example, in *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) (cited by Opp. 9), "general allegations about sex trafficking problems throughout the hospitality industry [were] not enough to put [the defendants] on notice about the sex trafficking of this plaintiff."  *Id.* at *6.  Similarly, in *B.M. v. Wyndham*, 2020 WL 4368214 (cited by Opp. 9), allegations that the defendants "were generally aware that acts of sex trafficking take place in their franchisee hotels" could not establish that the defendants "knew or should have known that Plaintiff was being trafficked."  *Id.* at *5-6; *see also J.L.*, 521 F. Supp. 3d at 1064 (cited by Opp. 18) (dismissing TVPRA claim for failure to "plausibly establish that [the defendant] should have known about plaintiff's sex trafficking at one of its hotels").

Plaintiffs' attempt to distinguish this consensus by arguing that these cases merely involved allegations that the defendants were "generally aware" of trafficking violations in the industry, *see* Opp. 10, is no distinction at all.  That is precisely what Plaintiffs allege here.  As these cases make clear, Plaintiffs' theory that Defendants "were generally aware that [ ]trafficking sometimes occurred" in their cocoa supply chains "unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'"  *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp.

15

3d 147, 154 (E.D.N.Y. 2020); *see also* Mot. 23-25.[9]

Although Plaintiffs cite allegations that purport to show that Defendants had knowledge of labor conditions "in their cocoa supply chains" (Opp. 11), none of those allegations establishes that Defendants should have known about *Plaintiffs'* particular circumstances.   There are no allegations, for example, that would establish that Defendants acquired cocoa from Plaintiffs' specific farms, monitored those farms, or even knew those farms existed.   Instead, Plaintiffs rely on public "reports" about the cocoa supply chain and general statements by Defendants about remediating child labor.   *See* Opp. 11-14.   These allegations do not connect Defendants to Plaintiffs, their farms, or their alleged traffickers, let alone show that Defendants should have known of the trafficking or forced labor that harmed Plaintiffs.   Treating these generic, industry-wide allegations as sufficient would dramatically expand the TVPRA to encompass anyone who purchases raw ingredients sourced from a region that has reported TVPRA violations.[10]

Plaintiffs counter that some "courts have held that 'failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence.'"  Opp. 14.  Those cases are inapposite because each plaintiff also alleged facts to support constructive knowledge of her own trafficking on the defendant's property, within view

---

[9] Defendants do not seek "to interpose a specific knowledge requirement" (i.e., *actual* knowledge of Plaintiffs' trafficking) in the TVPRA.  *Contra* Opp. 8.  Rather, Defendants argue—and the case law shows—that Plaintiffs must plead at least constructive knowledge of the *specific* TVPRA violations *that harmed Plaintiffs*.  "The real issue is not . . . actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element" as to the TVPRA violations that harmed the particular named plaintiffs who have sued.  *S.J.*, 473 F. Supp. 3d at 154; *see also craigslist*, 2020 WL 5494903, at *6 (holding that Plaintiff had alleged sufficient facts "to establish that craigslist plausibly had constructive knowledge *of her trafficking*" (emphasis added)).

[10] Plaintiffs assert that two Defendants "were sued in 2005 under the ATS by six former enslaved children," which "provides actual knowledge" of forced labor in their supply chains.  Opp. 8 & n.2.  As Defendants explained, the fact that some Defendants were named in a different, now-dismissed lawsuit, brought by different plaintiffs, is irrelevant.  *See* Mot. 25-26 n.9.

of the defendant's employees.  *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 967 (S.D. Ohio 2019) (named plaintiff alleged she was trafficked "[a]t each of the [d]efendants' hotel properties" and alleged "signs [that] should have alerted staff to her situation"); *J.C.*, 2020 WL 6318707, at *6 ("J.C. provides plausible allegations to show that these defendants had actual and/or constructive knowledge about *her* sex trafficking as opposed to just sex trafficking problems in the hospitality industry in general.").  Here, the complaint contains no allegations connecting Defendants to the farms where Plaintiffs worked or the traffickers responsible for Plaintiffs' injuries.

Unable to allege facts establishing Defendants' actual or constructive knowledge of Plaintiffs' trafficking, Plaintiffs assert that the "knowledge or acts of others" in the venture should be imputed to Defendants.  Opp. 9.  But the cases Plaintiffs cite imputed knowledge only where there was a principal-agent relationship supporting *respondeat superior* liability.  *See*, *e.g.*, *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 939-40 (D. Or. 2020).  Plaintiffs do not and cannot allege such a relationship here.  Any suggestion that this "imputed knowledge" doctrine should be expanded beyond a principal-agent relationship to anyone involved in the alleged venture cannot be squared with the statutory requirement that *each* defendant "knew or should have known" about the TVPRA violation affecting the plaintiff.  18 U.S.C. § 1595(a).  If mere participation in a venture were enough to satisfy that knowledge requirement, the statutory language would be meaningless.  *See H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 697, 707 (E.D. Mich. 2020) (rejecting argument that knowledge should be imputed absent "a principal-agent relationship").[11]

---

[11] Citing authorities that pre-date the Supreme Court's decisions in *Iqbal* and *Twombly*, Plaintiffs assert that "questions of [what] a party knew or should have known" cannot be resolved at the

### 2. *Plaintiffs improperly conflate "child labor" with "forced labor"*

Plaintiffs cannot satisfy the TVPRA's knowledge requirement for a second reason:  all of the complaint's allegations about the purported sources of Defendants' knowledge are about *child* labor, not *forced* labor.  Mot. 27.  Child labor is a serious socioeconomic problem, but the TVPRA prohibits only forced labor and trafficking, not labor performed by persons under a certain age. *See Apple* Opinion, at 24 (explaining that "child labor" is "not part of the definition of 'forced labor'" in the TVPRA).

Plaintiffs' opposition acknowledges that the TVPRA is limited to forced labor and trafficking, but contends that "many" of the sources cited in the complaint "specifically discuss forced and trafficked child labor."  Opp. 12.  That is incorrect.  The only source the opposition cites for that assertion is a *Washington Post* article reporting on efforts to "eradicate child labor," not the separate and distinct issue of forced labor.   *Id.* at 12 (citing Compl. ¶ 44); *see* https://wapo.st/2ZMMnN3.  Another source cited throughout the complaint explicitly states that it "focuses on child labor and hazardous child labor, *not forced labor/child slavery*."  NORC Report at 2 (emphasis added) (cited at Compl. ¶¶ 1, 39, 45, 54, 61, 98, 103, 111, 120).  The same is true of Defendants' statements quoted by Plaintiffs.  For example, Plaintiffs cite one Defendant's statement that "there is ongoing '*child labor* across the West African cocoa sector'" to support the very different claim that "Defendants have all acknowledged . . . *forced* child labor."  Opp. 12-13 (emphasis added).  Plaintiffs' allegations relating to the global social problem of child labor, which Defendants are trying to help combat, cannot establish that each Defendant had knowledge of

---

pleadings stage.  Opp. 15.  But Plaintiffs cannot avoid *Iqbal*'s requirement that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts routinely assess whether allegations of *mens rea* are sufficient to survive a motion to dismiss, *see id.* at 683, including for claims asserting knowledge under the TVPRA, *see supra* 15-17.

forced labor in its supply chain.

Plaintiffs try to bridge that gap by asserting that Defendants agreed to eliminate the "worst forms of child labor" in the Harkin-Engel Protocol signed in 2001. Opp. 12. But the "worst forms of child labor" are not synonymous with "forced labor." The former includes, for example, any work that is potentially dangerous.[12] A commitment by Defendants in 2001 to work to eradicate dangerous labor conditions in West Africa generally does not plausibly suggest that Defendants were aware of forced labor in their supply chains—let alone that they should have known of the forced labor violations that harmed Plaintiffs years later. If such allegations were enough, a plaintiff could infer that any company that makes a voluntary commitment to help combat a global social problem like child labor is aware of TVPRA violations in its supply chain, creating a perverse incentive *not* to make such commitments.

Plaintiffs' citation to Defendants' various codes of conduct is unpersuasive for the same reason. *See* Opp. 13-14. A policy prohibiting forced labor is not an admission that forced labor is, in fact, occurring in Defendants' supply chains. If anything, the cited policies and programs negate the suggestion that Defendants had knowledge of TVPRA violations, as they show that Defendants reasonably expected that such violations would *not* occur. Plaintiffs' suggestions that Defendants' policies do not go far enough, or are inadequately enforced, do not mean that Defendants have actual or constructive knowledge of any forced labor violations—much less the specific violations that injured Plaintiffs.

### D.   Plaintiffs fail to allege that Defendants obtained a "knowing[ ] benefit" from a TVPRA violation

---

[12] *See* https://bit.ly/3mE3nOJ. The Harkin-Engel Protocol defines the "worst forms of child labor" by incorporating the standards under International Labor Organization (ILO) Convention 182, *see* Opp., Ex. A at 1, which in turn covers "work which, by its nature or the circumstances in which it is carried out, is likely to harm the health, safety or morals of children," https://bit.ly/2ZVlQ0x.

Plaintiffs' theory that Defendants obtained a "benefit" from forced labor because they pay market prices set by the Ivorian government finds no support in the TVPRA. The TVPRA requires "a causal relationship between affirmative conduct" the defendant took that "further[ed] the [ ]trafficking venture and receipt of a benefit, with actual or . . . constructive knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). Plaintiffs' opposition does not mention that requirement or the case law applying it.

Plaintiffs' benefit theory is that if Defendants had paid a supra-market price for cocoa, then farmers would have stopped using forced labor. Opp. 28. This theory amounts to pure speculation that cocoa farmers would have stopped violating the TVPRA—as opposed to simply pocketing additional profits—if Defendants had paid a higher price. Mot. 29. There are no TVPRA cases finding a knowing benefit under such a speculative, counterfactual theory. In the sole case Plaintiffs cite, the hotel received payments from a trafficker for specific rooms in which sex trafficking occurred, and the court held that "the rental of a room [to a trafficker] constitutes a financial benefit from a relationship with the trafficker." *Red Roof Inns*, 2020 WL 3256261, at *4. That holding has nothing to do with this case, where Plaintiffs do not allege any transaction between Defendants and any traffickers or farmers that harmed Plaintiffs.

Plaintiffs also assert that Defendants could "eradicate child labor" (not forced labor) by "regularizing the cocoa suppliers, stopping procurement from illegal farming sites, and establishing a fully transparent supply chain." Opp. 28. But that assertion ignores Plaintiffs' own allegations that the vast majority of Defendants' cocoa is sourced through untraceable channels and that farmers could evade monitoring requirements. Mot. 30. Nor is there any support for Plaintiffs' apparent theory that a defendant "knowingly benefits . . . from participation" in a TVPRA venture, 18 U.S.C. § 1595(a), by not doing enough to eradicate or prevent a TVPRA

violation—much less labor practices that are not prohibited by the TVPRA.

### III.   Plaintiffs' TVPRA Claims are Impermissibly Extraterritorial

In *RJR Nabisco, Inc. v. European Community*, the Supreme Court held that RICO's private civil right of action provision did not apply extraterritorially, "*despite* [the Court's] conclusion that the presumption [against extraterritoriality] ha[d] been overcome with respect to RICO's substantive [criminal] prohibitions." 136 S. Ct. 2090, 2106 (2016) (emphasis added). Ignoring *RJR Nabisco*, Plaintiffs urge this Court to hold that the TVPRA permits private suits based on extraterritorial conduct because "Congress gave access to the same substantive 'offenses' for both criminal and civil actions." Opp. 31. The TVPRA's criminal and civil remedies may be based on "identical substantive provisions," *id.* at 30, but the same was true of RICO in *RJR Nabisco*, where the Supreme Court *rejected* the dissent's argument that a private right of action provision applies extraterritorially merely because it "is triggered by a violation" of a substantive provision that "all agree, encompasses foreign injuries." 136 S. Ct. 2113 (Ginsburg, J., dissenting). The Court should decline Plaintiffs' invitation to flout binding Supreme Court precedent.

Plaintiffs do not dispute that Section 1595 lacks the clear, affirmative indication of extraterritorial application that *RJR Nabisco* requires. Mot. 32-36. Instead, Plaintiffs contend that Section 1596 silently extends Section 1595's private civil right of action to extraterritorial conduct. Opp. 30-31. They are incorrect, as *Apple*'s analysis confirms. *See Apple* Opinion, at 27-29. "First, while § 1596 explicitly grants extraterritorial application to many criminal statutes, it does not mention their civil analogue, § 1595." *Id.* at 27. "Moreover, the text and structure of § 1596 suggest that it was focused on criminal, not civil, applications." *Id.* at 28. Section 1596 repeatedly uses the term "offense," which "'is most commonly used to refer to crimes.'" *Id.* (quoting *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 658 (2015)). In addition, Section 1596(b) "limits the jurisdiction granted in § 1596(a)" for *prosecutions* and "makes no

mention of civil suits." *Id.* at 28-29.

For these reasons, Plaintiffs' out-of-circuit authorities would be unpersuasive, even if they had addressed these arguments. But this "issue was never before th[e] court" in *Adhikari v. Kellogg Brown & Root, Inc.*, because "the parties there 'd[id] not dispute'" it. *Apple* Opinion, at 29 n.8 (quoting 845 F.3d 184, 200 (5th Cir. 2017)) (second alternation in original). And in *Aguilera v. Aegis Communications Group*, the defendant argued based on the TVPRA's heading— "Combating Trafficking in Persons in the United States"—that the Act "only applies when victims are trafficked *into* the United States." 72 F. Supp. 3d 975, 978-79 (W.D. Mo. 2014). In short, none of Plaintiffs' cases purported to interpret "offenses" to reach beyond criminal violations.

Plaintiffs also contend that the presumption against extraterritoriality is overcome because the "focus" of the TVPRA is where a person "benefit[ted]" from a TVPRA violation. Opp. 32-33. That "focus is too narrow." *Apple* Opinion, at 30. "[T]he focus of the TVPRA will naturally fall where the violation occurred." *Id.* at 29. And "Section 1595 provides a civil remedy to 'a victim of a violation' of the TVPRA—it does not create a new violation merely for benefitting from other violations." *Id.* at 30 (quoting 15 U.S.C. § 1595(a)). Because "Plaintiffs do not (and cannot) contest that their injuries, along with the underlying TVPRA violations that they allege, occurred anywhere other than" in Mali and Côte d'Ivoire, their claims should be dismissed as impermissibly extraterritorial. *Id.*; *see also Nestlé*, 141 S. Ct. at 1937.

## IV.   Plaintiffs' Common-Law Claims Must be Dismissed

### A.   The complaint fails to adequately plead any common-law claim

Plaintiffs fail to address the fundamental flaw in their common-law claims: the lack of any relationship between Defendants and Plaintiffs. *See* Mot. 38-44. Instead, they argue, incorrectly, that their TVPRA "venture" allegations suffice. Opp. 34, 36, 37. This Court should dismiss each of Plaintiffs' common-law claims for the same reasons the Court in *Apple* dismissed virtually

identical claims.  *See Apple* Opinion, at 31-33.

*First*, the lack of "*any* relationship" between the parties defeats a claim for unjust enrichment because Plaintiffs do not plausibly "allege that *they* conferred a benefit on *Defendants*."  *Apple* Opinion, at 31 (first emphasis in original).  The unjust enrichment cases Plaintiffs cite (Opp. 33-35) all involve such direct relationships.  In *Bregman v. Perles*, for example, defendant lawyers directly hired an investigator and failed to pay him, so he sued them for breach of contract.  747 F.3d 873, 874 (D.C. Cir. 2014).[13]

There is no such relationship here.  Taking Plaintiffs' well-pleaded allegations as true, some (but not all) Plaintiffs allegedly worked on cocoa farms in "areas" of a country where some (but not all) Defendants sourced cocoa; and tracing cocoa from those farms to particular Defendants, according to Plaintiffs, is nearly impossible.  Mot. 39.  Plaintiffs' only response—that 70% of Ivorian cocoa plantations are allegedly part of Defendants' "combined" supply chains (Opp. 34)—confirms that Plaintiffs do not and cannot allege that any individual Plaintiff conferred a benefit on any individual Defendant.  By farming the cocoa "that Defendants might (or might not) have later used, Plaintiffs have as much conferred a benefit upon the Defendants as they have anyone with a [chocolate bar] in their pocket."  *Apple* Opinion, at 31.  "An unjust enrichment claim cannot survive such a tangential chain."  *Id.*

*Second*, this lack of relationship likewise defeats Plaintiffs' negligent supervision claim, which requires that a defendant have a "legal obligation to supervise" the person committing the wrong.  *Apple* Opinion, at 32.  But Plaintiffs cannot dispute that "no Defendant employed any Plaintiff, nor any of the people who oversaw them."  *Id.*  Plaintiffs argue that because Defendants

---

[13] *See also*, *e.g.*, *Mazor v. Farrell*, 186 A.3d 829 (D.C. 2018) (father and son); *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 249 (D.C. 2005) (corporation and hired consulting firm); *FDIC v. Bank of Am., N.A.*, 308 F. Supp. 3d 197 (D.D.C. 2018) (FDIC and regulated bank).

were purportedly "co-venturers with their cocoa suppliers," Defendants must have "had the ability to prevent them from using forced child labor." Opp. 36. They also try to create a new duty by arguing that Defendants' policies against child labor transform them into supervisors of all the workers in their supply chains. *See id.* Plaintiffs do not cite any case supporting these new theories of liability, and the Court in *Apple* correctly rejected them. *See Apple* Opinion, at 32 & n.9.

*Third*, Plaintiffs' IIED claim fails for similar reasons. *See Apple* Opinion, at 32-33. Contrary to Plaintiffs' suggestion (Opp. 37), no case law supports the imposition of this liability based on alleged participation in a venture: Plaintiffs' cases involve direct relationships, not ventures. Opp. 37-38 (citing *Purcell v. Thomas*, 928 A.2d 699 (D.C. 2007) (employee and employer)). And Plaintiffs must show that Defendants' conduct—as opposed to others' conduct— was "especially calculated to cause, and does cause, mental distress of a very serious kind." *Ochoa v. Superior Court*, 703 P.2d 1, 4 n.5 (Cal. 1985) (emphasis omitted). The only case Plaintiffs cite to support their argument that they have satisfied this requirement is one involving abusive treatment by a plaintiff's *direct employer*. Opp. 38 (citing *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 119-20 (D.D.C. 2012)). Nor do Plaintiffs cite any case supporting their view that an IIED claim can proceed based on allegations that a defendant targeted, not the plaintiff personally, but a "group" of which the plaintiff was a member. *Id.* And in any event, "there is nothing extreme and outrageous about Defendants' conduct; purchasing a commodity from a supplier." *Apple* Opinion, at 32-33 (quotation marks omitted).

### B.    Plaintiffs' common-law claims are time-barred

Plaintiffs concede that their common-law claims are barred by the applicable statutes of limitations. Opp. 38-40. Their sole argument in response is premised on equitable tolling. But "District of Columbia law does not recognize the concept of equitable tolling." *Johnson v. Marcheta Invs. Ltd. P'ship*, 711 A.2d 109, 111 n.2 (D.C. 1998). Plaintiffs' contrary statement that

equitable tolling "is recognized by the District of Columbia" relies on cases from this Court or the D.C. Circuit that involved equitable tolling for *federal* claims.  *See* Opp. 38-39.  But for D.C. common-law claims, this Court "cannot apply the doctrine of equitable tolling differently than would the District of Columbia courts."  *Nattah v. Bush*, 770 F. Supp. 2d 193, 208 (D.D.C. 2011).

The District of Columbia Court of Appeals has recognized just "two limited exceptions to [its] generally strict application of the statute of limitations:  the lulling doctrine and the discovery rule."  *Roe v. Wilson*, 365 F. Supp. 3d 71, 78 (D.D.C. 2019) (alteration in original).  Plaintiffs do not cite any case from a District of Columbia court recognizing "extraordinary circumstances" as a basis for equitable tolling or applying either the lulling doctrine or the discovery rule in similar circumstances.  *See Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, 10 (D.D.C. 2019) ("Doe seeks to extend the [discovery rule] beyond the specific set of facts considered by the [D.C. Court of Appeals].  Without a clear mandate from the D.C. Court of Appeals, this Court is unwilling to do so.").  As a result, Plaintiffs' common-law claims should be dismissed as untimely.

## V.   Plaintiffs' Cursory Request for Leave to Amend Should be Denied

Leave to amend is "not automatic[ ]" and should be denied where amendment would be "futil[e]."  *N. Am. Cath. Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 83-85 (D.D.C. 2012) (internal quotation marks omitted).  The deficiencies in Plaintiffs' complaint cannot be cured by amendment.  Nor have Plaintiffs identified any facts they would add if given the chance.  Plaintiffs' "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought"—is insufficient.  *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004).  Their complaint should be dismissed with prejudice.

## CONCLUSION

For these reasons, this Court should dismiss Plaintiffs' complaint with prejudice.

November 19, 2021

Respectfully submitted,

/s/ Perlette Michèle Jura

John E. Hall (D.C. Bar No. 415364)
Henry Liu (D.C. Bar No. 986296)
COVINGTON & BURLING LLP
One CityCenter
850 10th Street NW
Washington, D.C.  20001
(202) 662-6000

Theodore J. Boutrous Jr. (D.C. Bar No. 420440)
Perlette Michèle Jura (D.C. Bar No. 1028959)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7000
pjura@gibsondunn.com

*Counsel for Barry Callebaut U.S.A. LLC*

*Counsel for Nestlé USA, Inc.*

Andrew J. Pincus (D.C. Bar No. 370762)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC  20006
(202) 263-3000

Craig A. Hoover (D.C. Bar No. 386918)
David M. Foster (D.C. Bar No. 497981)
Danielle Desaulniers Stempel
  (D.C. Bar No. 1658137)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C.  20004
(202) 637-5694

*Counsel for Cargill, Incorporated and
Cargill Cocoa*

Daniel S. Ruzumna (D.C. Bar No. 450040)
Steven A. Zalesin (*pro hac vice* forthcoming)
Jonah M. Knobler (*pro hac vice* forthcoming)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036
(212) 336-2000

*Counsel for Mondelēz International, Inc.*

Paul C. Rosenthal (D.C. Bar No. 234252)
Bezalel A. Stern (D.C. Bar No. 1025745)
KELLEY DRYE & WARREN LLP
3050 K Street N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400

*Counsel for The Hershey Company*

Stephen D. Raber (D.C. Bar No. 400999)
David Forkner (D.C. Bar No. 464337)
David M. Horniak (D.C. Bar No. 998649)
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC  20005
(202) 434-5000

Lauri A. Mazzuchetti (*pro hac vice*)
KELLEY DRYE & WARREN LLP
One Jefferson Road
Parsippany, NJ  07054
(973) 503-5900

*Counsel for Olam Americas, Inc.*

*Counsel for Mars, Incorporated and
Mars Wrigley Confectionary US, LLC*