IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ISSOUF COUBALY, *et al.*,
*Plaintiffs*,

v.                                                                    Civil Action No. 21-0386 (DLF)

CARGILL, INCORPORATED, *et al.*,
*Defendants*.

**PLAINTIFFS' SURREPLY**

Terrence P. Collingsworth (D.C. Bar No. 471830)
INTERNATIONAL RIGHTS ADVOCATES
621 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) 543-5811
tc@iradvocates.org
*Counsel for Plaintiffs*

Plaintiffs file this Surreply in response to Defendants' Reply Brief (ECF No. 35), which relies heavily upon a recent decision, *Doe I v. Apple Inc.*, No. 19-CV-3737 (D.D.C. Nov. 2, 2021), ECF 50 ("Opinion"). The Opinion is legally erroneous and conflicts with the great weight of authority on all of the major issues. Accordingly, Plaintiffs in that case are appealing. Further, the facts of this case require a different result even if the basic legal conclusions in the *Apple* Opinion are correct. Each issue of that ruling that is also presented in this case will be discussed in turn:

**The Defendants are in a "venture**." The Opinion applies a dictionary definition of "venture," *id.* at 20-21, which conflicts with all of the other federal decisions which hold the definition of "venture" in the parallel criminal provision of section 1591 should be applied, which defines "venture" as "any group of two or more individuals ***associated in fact, whether or not a legal entity,***" 18 U.S.C. § 1591(e)(6) (emphasis added), or that this definition was too narrow and applied an even broader standard based on a mere "tacit understanding." *See* Plaintiffs' Opposition ("Pls Opp"), ECF No. 33, at 17-19. No other case requires a showing of a formal "commercial enterprise," and the *Apple* court cites none.  *See* Opinion at 20-21. The TVPRA was primarily designed to reach sex trafficking where there would never be a formal business venture.

Plaintiffs here establish that they have alleged objectively verifiable business relationships between the cocoa Defendants and the plantations or farmer cooperatives they exclusively purchase from, and Defendants exercise their rights to dictate terms and conditions on the cocoa plantations. Pls Opp at 20-21. Further, the seven Defendant cocoa companies have long-standing and formal relationships with each other specific to their plans and programs to address child labor with a public relations strategy rather than making real changes to their supply chains. All of this subterfuge

was done to enhance their mutual profits. *Id.* at 16-17, 20-21. Even if a formal "commercial enterprise" is required, Plaintiffs' allegations in this case meet that standard.[1]

**Plaintiffs were trafficked and subjected to forced labor in violation of §§ 1589 and 1590**. The *Apple* Court erroneously applied the standards for forced labor and trafficking under TVPRA sections 1589 and 1590, and improperly resolved facts on a motion to dismiss regarding the Plaintiffs' states of minds. *See* Opinion at 22-26. Here, based on Plaintiffs' allegations of their horrible ordeals working as slaves, *see* Complaint ¶¶ 127-148, Defendants do not contest that Plaintiffs suffered violations of sections 1589 and 1590. *See* Pls Opp at 29-30.

**Defendants knew or should have known that Plaintiffs were subjected to forced labor**. While it is closely tied to *whether* there was forced labor, the *Apple* Court did not address this issue at all. Defendants here, anticipating the last word on this issue, double down on their baseless argument that the knowledge standard of section 1595 (a) requires *specific* knowledge that *each* Plaintiff was subjected to forced labor. Defs Reply at 15-16. As every court to have considered this issue has held, imposing a specific knowledge requirement would negate the explicit "should have known" language in § 1595(a). *See* Pls Opp at 8-10. Further, Defendants grossly mischaracterize Plaintiffs' allegations and the long, objective history of Defendants' knowing use of forced child labor while improperly attempting to refute this factual issue on a motion to dismiss. *See* Defs Reply at 16-19. The clear record of Defendants' knowledge of forced child labor in their supply chains begins with their collective promise when signing the Harkin-Engel Protocol in 2001 to end the "worst forms of child labor," which specifically included "forced" child labor, Pls Opp at 11, then continued through years of official reports of "forced child labor" in cocoa supply chains, further admissions of using

---

[1] The *Apple* Court did not reach whether the Defendants "participated" in the venture, but here the Complaint alleges each Defendant's participation in the cocoa venture. *See* Pls Opp at 21-25.

"forced child labor," Defendants Nestle and Cargill getting sued in 2005 for using forced child labor and litigating that case for 16 years, media exposés of children enslaved on cocoa plantations, and grand new promises by the companies to end their reliance on the worst forms of child labor, again specifically including forced child labor. *Id.* at 11-15.  Defendants' claim of ignorance is frivolous, and this fact-laden issue cannot in any event be resolved on a motion to dismiss.

**The TVPRA has extraterritorial application**. While stating it was a "close call," the *Apple* Court became the first to hold that the 2008 amendment to section 1596(a) did ***not*** extend civil claims for forced labor or trafficking extraterritorially. Opinion at 26-30. As Plaintiffs here established, ***every*** other court to consider the question has found that the amendment to section 1596 (a) extends both civil and criminal offenses extraterritorially. Pls Opp at 30-33. The term "offense" in section 1596 (a) refers to the substantive prohibitions that were extended extraterritorially, and it makes no distinction whether the case is civil or criminal. *See id.*

**Plaintiffs have properly alleged viable common law claims**. After finding there was no "venture" under the TVPRA, the *Apple* Court then found there was no relationship or connection between the Plaintiffs and the tech companies to support their common law claims for unjust enrichment, negligent supervision, and intentional infliction of emotional distress. Opinion at 31-33. As noted, the *Apple* Court's finding there was no "venture" was in error, and if there was a "venture," as in this case, this would supply the relationship necessary for these torts to be viable. Pls Opp at 33-38.  Here, Defendants' long-term relationships with what they term "their" cocoa suppliers, and Defendants' control over the terms and conditions of the operations on their plantations, provide the factual baseline for the common law torts. *See id.*

**Plaintiffs have standing to sue**.  The *Apple* Court found that the Plaintiffs there had failed to satisfy the second prong of the well-established standing test, whether their injuries were "fairly traceable" to the Defendants. Opinion at 11-15. This decision was also based entirely on the Court's

3

erroneous finding that Defendants Apple, Tesla, Dell, Microsoft, and Google were not in a "venture" and therefore had no relationship with or control over the cobalt mines they contract with and those who operate and manage them. *Id.* at 12-14. As noted, on appeal, those Plaintiffs will show this was erroneous because they alleged the tech Defendants had contractual relationships with their cobalt suppliers, that, among other things, gave Defendants the right to enforce their policies against child labor in all aspects of their supply chains; they just opted not to exercise their contractual control to continue to have steady access to cheap cobalt.

  Here, Defendants implausibly claim that they are just innocent purchasers of cocoa and are being sued merely for failing to act affirmatively to intervene in a tragedy not of their making. Plaintiffs' allegations, which must be taken as true, tell a far different story. In 2001, when Defendants signed the Protocol, they admitted the cocoa production system they had established, supported, and benefitted from for decades was fundamentally dependent on the worst forms of child labor, including forced child labor. *See, e.g.*, Complaint ¶¶ 49-53. Defendants did not need to act to *form* a venture to enslave children; that system was in place. They instead formed a coverup venture to protect the existing system and prolong their ability to profit from the labor of enslaved children trapped in a system Defendants established. *Id.* ¶¶ 22,45,49-55,85,96,104,112-15, 123-24,154-58. Defendants had the necessary control, policies, and programs in place to end forced labor in their cocoa supply chains and redress Plaintiffs' injuries. *See, e.g.*, Complaint ¶¶ 22,39,45,47,50,52-55,59-61,67,69,70, 71,82-84,89,96,99, 101, 103, 104,111-15,120,123-24,154-58 and Pls Opp at 16-25. That they have failed to do so establishes only that they will continue to profit from forced child labor until they are required by this Court to stop. Defendants' position is akin to a slaveholder on an Alabama cotton plantation claiming after the Thirteenth Amendment outlawed slavery that he need not act affirmatively to free his slaves. The TVPRA establishes liability because Defendants are knowingly benefiting from the abhorrent system they established to profit from enslaved children.

4

Respectfully submitted this 29th day of November 2021

s/ Terrence P. Collingsworth
Terrence P. Collingsworth (D.C. Bar No. 471830)
INTERNATIONAL RIGHTS ADVOCATES
621 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) 543-5811
tc@iradvocates.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on November 29, 2021 I electronically filed the foregoing with the United States District Court for the District of Columbia by using the CM/ECF system, which will send a notice of filing to all registered users.

Date: November 29, 2021

/s/ Terrence P. Collingsworth
Terrence P. Collingsworth (D.C. Bar No. 471830)
INTERNATIONAL RIGHTS ADVOCATES
621 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) 543-5811
tc@iradvocates.org

*Counsel for Plaintiffs*